UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AJ HOLDINGS OF METAIRIE, LLC and JILL JOHNSON BOUVIER | * | CIVIL ACTION |
| | | NO. 21-318 |
| v. | * | |
| | | SECTION: "T" |
| BRENDA P. FISCHBEIN | * | |

## ORDER

Before the Court is a *Motion to Dismiss Amended and Restated Complaint Pursuant to Fed. R. Civ. Proc. 12(b)(6) and Fed. R. Civ. Proc. 9(b), for Lack of Subject Matter Jurisdiction Under Fed. R. Civ. Proc. 12(b)(1), or, Alternatively, to Abstain* filed by Defendant Brenda P. Fischbein.[1] Plaintiff Jill Johnson Bouvier and AJ Holdings of Metairie, LLC ("AJ Holdings") filed a response.[2] For the following reasons, the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## FACTUAL BACKGROUND

William Thomas Johnson died on September 23, 2016, leaving behind several beneficiaries, including his daughter, Plaintiff Jill Johnson Bouvier, and the Defendant, Brenda Fischbein.[3] Following the wishes of Mr. Johnson, Ms. Fischbein was placed in possession of William T. Johnson, Inc., a business dealing in "jewelry and precious metals" under the name of Southern Rings.[4] Ms. Fischbein's receipt of Southern Rings was conditioned on her paying Ms. Bouvier the "cost of each item sold" in inventory at the time of Mr. Jefferson's death "plus an

---

[1] R. Doc. 32.
[2] R. Doc. 37.
[3] R. Doc. 26, Exhibit A. That succession proceeding was still pending as of September 2021 in the 22nd Judicial District Court for the Parish of St. Tammany. *In re the Succession of William Thomas Jefferson*, Case Number 2016-30844.
[4] R. Doc. 26 at 2-4.

1

additional sum of fifteen [percent]."[5] Ms. Fischbein began managing Southern Rings in 2016 and paid Jill over $22,000 before the company was judicially terminated in July of 2018.[6] Ms. Bouvier and AJ Holdings of Metairie, LLC ("AJ Holdings"), the owner of the premises on which Southern Rings operated, filed the present lawsuit on February 12, 2021.

Ms. Bouvier, through the First Amended and Restated Complaint, puts forward two general claims.[7] First, she asserts that Ms. Fischbein failed to surrender over $54,000.00 owed to her under the conditional bequest.[8] Second, she alleges that Ms. Fischbein engaged in a "scheme to defraud her" by taking and selling inventory that was earmarked for the conditional bequest.[9] Namely, she contends that approximately a dozen diamonds have been "misappropriate[ed]" by Ms. Fischbein, both during and after her management of Southern Ring's inventory, in violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") and the Louisiana Racketeering Act.[10] She argues that, in breach of RICO, Ms. Fischbein wrongly acquired the diamonds through "a pattern of racketeering activity" composed of several "predicate acts," including wrongly operating a financial enterprise, peddling jewelry bound for interstate commerce, entering AJ Holding's premises without license, and committing mail fraud.[11]

In response, Ms. Fischbein filed a motion to dismiss, asserting that this case is an "improper[] attempt to convert a state court succession dispute into a federal RICO suit."[12] Specifically, she argues that the RICO claim is both factually and legally deficient while the state

---

[5] *Id.* at 3.
[6] *Id.* at 5.
[7] *Id.*
[8] *Id.* at 18. Jill Bouvier alleges that this is the sum due from the sales of certain inventory plus fifteen percent.
[9] *Id.* at 1.
[10] 18 U.S.C. §§ 1961-1964; LA R.S. §§ 1351 *et seq.*
[11] R. Doc. 26 at 5-18.
[12] *Id.* at 4.

2

law claims do not belong in this forum.  First, Ms. Fischbein notes that the executor of the estate was bound to disperse the inventory proceeds plus 15%, not her.[13] She argues that claim "is solely a state court succession dispute" as "only the Executor can be liable for damages caused during the succession."[14] As for the RICO claim, Ms. Fischbein asserts that Ms. Bouvier "fail[ed] to properly allege two of the pleading requirements;" namely a (1) continuous pattern of racketeering conduct and (2) the existence of an enterprise.[15] Ms. Fischbein contends that "[n]either exists here" because Brenda's alleged activities were confined to "a single lawful transaction," not a series of incidents, and there is no ongoing enterprise because the company, Southern Rings, was judicially terminated in 2018.[16] The same argument is made for the Louisiana racketeering claim.[17] Ms. Fischbein asks this Court to reject the federal RICO claim and dismiss the remaining state law claims because they "belong in state court."[18] Ms. Bouvier filed a response, echoing the arguments raised in her amended complaint.[19]

## LAW AND ANALYSIS

### I.     Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[20] A claim is not "plausible on its face" when "it appears certain that the plaintiff[s] cannot prove any set of facts in support of [their] claim that

---

[13] *Id.* at 3. The Plaintiff's amended complaint appears to acknowledge the executor's role, but states that "it is unclear what DOD Inventory Brenda received upon being put into possession of" Southern Rings "and what has subsequently been sold by her." R. Doc. 28 at 20.
[14] R. Doc. 32-1 at 5.
[15] *Id.* at 4-5.
[16] *Id.* at 5. Ms. Fischbein also alleges that, as a practical matter, Jill failed to "assert the dates of the alleged [racketeering] activities, and the participants in those acts" in violation of this Court's RICO Standing Order.[16]
[17] *Id.* at 5.
[18] *Id.* at 4.
[19] R. Doc. 37.
[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

would entitle [them] to relief."[21] To state a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), a plaintiff must allege three things: a *person* who engages in a "*pattern of racketeering activity*" that is "connected to the acquisition, establishment, conduct, or control of an *enterprise*."[22] Upon reviewing the motions and the applicable law, the Court finds that Ms. Bouvier and AJ Holdings have failed to meet this threshold.

First, the Plaintiffs have not shown the existence of an enterprise. "A plaintiff establishes the existence of an enterprise by providing 'evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'"[23] Southern Rings was judicially terminated in 2018.[24] Therefore, Plaintiffs cannot show there is an ongoing enterprise.

Second, the Plaintiffs have failed to establish a "pattern of racketeering activity." To do so, they "must show at least two predicate acts of racketeering that…relate[] to or pose a threat of continued criminal activity."[25] The latter condition, known as the continuity requirement, means a plaintiff must do more than simply "[e]stablish[] the minimum number of predicates" to prove a pattern.[26] The United States Supreme Court has explained:

> "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition…A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates

---

[21] *Piotrowski v. City of Houston*, 51 F.3d 512, 514 (5th Cir.1995) (quoting *Leffall v. Dallas Indep. Sch. Dist.*, 28 F. 3d 521, 524 (5th Cir.1994)); *Iqbal*, 556 U.S. at 677. Additionally, in evaluating a complaint under Rule 12(b)(6), the district court should confine itself to the pleadings, and the documents attached to the complaint. *Umbrella Invs. Grp., L.L.C. v. Wolters Kluwer Fin. Servs.*, Inc., No. CV 19-02156, 2020 WL 68613, at *1 (E.D. La. Jan. 7, 2020).
[22] *Scottsdale Ins. Co. v. Dorman*, 153 F. Supp. 2d 852, 856 (E.D. La. 2001) (emphasis in original). *See In re Burzynski*, 989 F. 2d 733 (5th Cir. 1993).
[23] *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 738 (5th Cir. 2019); *U.S. v. Turkette*, 452 U.S. 576, 583 (1981).
[24] The Plaintiffs briefly allege that "Brenda continues to use the trade name 'Southern Rings'" in a new enterprise, but that organization was terminated on May 15, 2021. R. Doc. 37.1, n. 20.
[25] *Id.* (quoting *Tel-Phonic Services, Inc. v. Intern., Inc.*, 975 F. 2d 1134, 1139-40 (5th Cir. 1992).
[26] *Tel-Phonic Servs.*, 975 F.2d at 1140; *In re Burzynski*, 989 F. 2d at 742.

extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.[27]

In other words, RICO patterns require long-term, repetitive conduct which means "predicate acts that are part and parcel of a single, otherwise lawful transaction" do not establish a pattern of racketeering activity.[28] For example, in *Scottsdale Ins. Co. v. Dorman*, the RICO claim centered around a $45,000 false insurance claim.[29] Although the incident spanned seven months, the court found that any acts committed in furtherance of the insurance claim were part of a "single fraudulent episode," meaning that several different unlawful acts can still constitute "a single attempt" at some overarching illegal goal under RICO.[30] Therefore, there was no pattern of conduct because there was only one incident, an "attempt to avoid paying [] medical expenses," even if that episode was made up of multiple illegal deeds.[31] The *Scottsdale* court related this to *Apparel Art International, Inc. v. Jacobson* where a scheme to obtain a government contract involving bribes, cover-ups, and false statements constituted a "single effort" to acquire a contract despite there being "several instances of criminal behavior" committed over several months.[32] In both *Scottsdale* and *Apparel Art*, the alleged conduct, although expansive, established a "closed-ended pattern that extended for an insufficient duration" of time to uphold a RICO claim.[33] Furthermore, because they were closed-ended, there was no "threat of future racketeering

---

[27] *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 241-42 (1989). Continuity "keep[s] civil RICO focused on the long term criminal conduct Congress intended it to address…and prevent[s] RICO from becoming a surrogate for garden-variety fraud actions properly brought under state law." *Malvino v. Delluniversita*, 840 F. 3d 223, 231 (5th Cir. 2016).
[28] *Word of Faith World Outreach Center Church, Inc. v. Sawyer*, 90 F. 3d 118, 123 (5th Cir. 1996).
[29] *Scottsdale*, 153 F. Supp. at 856-57.
[30] *Id.* at 857-58.
[31] *Id.* at 857.
[32] 967 F.2d 720, 723 (1st Cir. 1992).
[33] *Scottsdale*, 153 F. Supp. at 856-57.

5

activity" because the schemes "clearly ended" after being discovered.[34]

Here, the Plaintiffs have failed to establish a pattern of racketeering activity because the facts alleged, even if true, do not reveal a pattern of long-term activity that threatens more illegal conduct.[35] While Ms. Bouvier does assert four predicate acts, those actions are "part and parcel of a single, otherwise lawful transaction," Mr. Johnson's succession and Ms. Fischbein's resulting management of Southern Rings. Ms. Fischbein's confined conduct, which lasted no more than three years, has presumably ended. Southern Rings is now defunct and Ms. Fischbein cannot acquire more inventory. There is no "threat of repetition."[36] Therefore, because Plaintiffs allege actions that were confined to a single, short-lived episode of criminal activity that has presumably ended, the continuity requirement has not been met. Even assuming Ms. Fischbein did commit these actions, they do not establish "the long term criminal conduct Congress intended [RICO] to address."[37] Accordingly, the Defendant's motion to dismiss the Plaintiffs' RICO claim is **GRANTED**.

## II. Supplemental Jurisdiction

Having found the federal RICO claim lacking, "it is well-within the district court's discretion [] to dismiss the state law claims by declining to exercise supplemental jurisdiction."[38] Plaintiffs state this Court has original jurisdiction over the RICO claim under 28 U.S.C. § 1331

---

[34] *Id.* at 857.
[35] The Plaintiffs have not alleged that Brenda may undertake future wrongdoing. *See Scottsdale,* 153 F. Supp. 2d at 857 ("…and Scottsdale does not contend that the alleged RICO enterprise poses a threat of future racketeering activity.").
[36] *Northwestern Bell*, 492 U.S. at 241-42.
[37] *Delluniversita*, 840 F. 3d 223, 231 (5th Cir. 2016).
[38] *Jackson v. Nat'l Ass'n for Advancement of Colored People*, 546 F. App'x 438, 444 (5th Cir. 2013); 28 U.S.C. § 1367(c).

and supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367.[39] 28 U.S.C. § 1367 "provides that a district court 'may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction.'"[40] Considering the pendent jurisdiction factors of judicial economy, convenience, fairness, and comity, these claims would be more appropriately and effectively addressed in state court for two reasons.[41] One, the 22nd Judicial District Court is more familiar with the nexus of facts at hand and amply capable of dealing with these claims. That familiarity will prevent the Court and the parties from unnecessarily expending resources.[42] Two, there is no indication that either party will be prejudiced by having these claims decided in state court.[43] Considering the Court has dismissed the RICO claim, it now declines to exercise supplemental jurisdiction over the state law remaining cases, and those claims are **DISMISSED WITHOUT PREJUDICE.**

## CONCLUSION

**IT IS ORDERED** that the Plaintiffs' RICO claim is **DISMISSED**,

**IT IS FURTHER ORDERED** that the Plaintiffs' state law claims are **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, this  31st  day of      January     , 2022.

_____
HONORABLE GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE

---

[39] R. Doc. 26 at 2.
[40] *Scottsdale*, 153 F. Supp. 2d at 858; 28 U.S.C. § 1367(c).
[41] *Enochs v. Lampasas County*, 641 F. 3d 155, 159 (5th Cir. 2011).
[42] *See Enochs*, 641 F. 3d 155.
[43] *See id.*